May it please this Court, My name is Jessica Buell and I represent the petitioner Ms. Juana Pelico-Perez. I wish to reserve three minutes for rebuttal. This petition for review comes before this Court as an appeal from the decision of the Board of Immigration Appeals denying Ms. Pelico her asylum and withholding of deportation claims. The record before the agency, based on Ms. Pelico's credible testimony, her written asylum application and supporting documents demonstrates that Ms. Pelico qualifies and merits approval of her asylum and withholding of deportation applications. The facts show that Ms. Pelico is a K'iche' Indian from Guatemala. Her father, a human rights activist, accused the Guatemalan military of indiscriminately shooting at villagers. Her husband spoke out against an American oil company which was closely associated with the Guatemalan government at a time when such activities were considered pro-guerrilla. He also agreed to lend support to the guerrilla movement. She was involved with charitable activities of welcoming back refugees which was equated with having an anti-government political opinion. The military was told that her home in San Lucas was being used as a safe house for guerrillas and she was growing food for them. As a result of deportations, the Guatemalan army burned her husband alive, her brother was bound, beaten, called a guerrilla, and on a separate occasion kidnapped. The Guatemalan military forced her to relocate and restricted her access to food. She was personally threatened by an ex-soldier. She and her family received numerous death threats delivered to their homes even after relocating between the years of 1988 and 1997. In August of 1997, men came to her home, questioned her family as to her whereabouts, and left two threats directed to her. The agency's conclusions in denying her claims are not supported by substantial evidence. What do we do with the changed country conditions finding? Well, the documentary evidence that was provided does support her claims in the sense that it does state that there was a peace accord that was signed in December of 1996, but also states that there were continuing human rights violations. And in particular, there were human rights violations committed by ex-military commissioners, that people in villages were particularly feared, the military commissioners, and that indigenous and rural people were targeted. So I would submit that the background reports do establish that the government has not met its burden of a preponderance of evidence to show that the country conditions have changed. Under the precedent decisions of Lynn v. INS, Ruano v. Ashcroft, and Salazar v. INS, there's compelling evidence in the record that supports the finding of past persecution. The rule set forth in Lynn is that death threats, without more, may not rise to the level of past persecution. However, death threats combined with close confrontation and harm to family members may constitute past persecution. In Lynn, the court held that because the petitioner was not harmed, interrogated, detained, trespassed upon, or closely confronted, and his family members remained unharmed, that there was not sufficient evidence for finding a past persecution. In Salazar, the court found that the record compelled the finding of past persecution, in part because the petitioners beat the petitioner's parents, in addition to sending death threats to Salazar himself. In addition, in Ruano, because the petitioner had narrowly escaped confrontation on several occasions and was pursued at his home, this court found that he did establish past persecution. Ms. Palico received numerous death threats at her home. Persecutors confronted her family members while leaving the August 1997 threats. Her family members were murdered, kidnapped, and beaten, and she was closely confronted by an ex-soldier. Under this court's precedent, this amounts to past persecution. Moreover, she has established that she will be persecuted in the future. She stated she fears she will be killed if she is returned to Guatemala. Reports from many organizations demonstrate that indigenous and perceived pro-Guerrilla individuals are not safe in Guatemala. And if there's no further questions, I'd like to reserve the rest of my time. The evidence that a greedy cousin wanted her land, and that's what was causing her trouble. The judge did question whether her cousin Manuel would be interested in the land and therefore have sent the letters, but Ms. Palico testified consistently that she believed that the letters were from the military. In addition, in the August 1997 letters, her children wrote to her that the men that delivered the letters to the home were unknown and that she testified that Manuel, her cousin, would have been known in the village. So I don't believe that the judge's belief that they were sent by Manuel is supported by substantial evidence. And he also further finds, he ultimately concludes that they were fabricated by herself, which would imply that he didn't believe that they were sent by her cousin Manuel, that instead she fabricated. But that decision was overturned by the Board of Immigration Appeals. So I believe that they were not sent by her cousin. Thank you. If it please the Court, my name is Don G. Scroggin, counsel for the respondent in this case about generalized civil strife in Guatemala and generalized lawlessness during the civil war in Guatemala between the government and the guerrillas. The heart of this case rests upon two foundations that the immigration judge found to find that there is no past persecution on account of any protected ground. The first was that any harm that had occurred to the petitioner did not rise to the level of persecution because it was only unfulfilled threats. The second foundation of the immigration judge's decision was that even if these threats did rise to the level of persecution, they were not on behalf of any protected ground. There's no evidence that any of the threats of harm came to the petitioner because of her native Indian race or because of her imputed, allegedly imputed political opinion. Bottom line is the petitioner herself was never harmed. With respect to the imputed political opinion, it is essential in order for a political opinion to be imputed that it actually be imputed by the alleged persecutor. Here there's no evidence that petitioner had any real or imputed political opinion. If I might look to one pillar of the immigration judge's decision, there's no evidence of imputed opinion. First of all, her husband was killed, right? That's correct, Your Honor. Her husband was killed and her brother was kidnapped and beaten, right? That's correct, Your Honor. Now isn't it, you know, logical if she were threatened that the threats were the result of her association with her brother and her husband? Your Honor, first of all, her husband was killed not for a political reason but because he spoke out against an oil company. It's uncertain why he was killed. As for the brother, the brother was abducted but for unknown reasons and by necessity. In neither case is it clear that the harm suffered by her family members was on account of a political opinion. And certainly there's no evidence in the record that anyone ever imputed any political opinion to the petitioner, in this case, Ms. Pelico Perez. What about the decapitation of the fellow villagers that the others were, you know, were forced to observe? Your Honor, the nation was at civil war. During a time of warfare there were often atrocities. Isn't that clearly political? I beg your pardon? Isn't that clearly political? It may have been, Your Honor, but it was not directed at petitioner. It wasn't? There's no evidence that any of the perpetrators of that crime intended it to be directed at the petitioner. Why would they force her to watch the decapitation if they did not want it to have some effect upon her? There was no evidence, Your Honor, that she was treated any different from the other people who were forced to watch that decapitation. And it's essential that petitioner must be single. So in other words, you're saying nobody in the village was subject to political persecution? I'm saying, Your Honor, that what's required by the law of this circuit is the petitioner must be singled out from the general strife for persecution, that she must show she's at particular risk. The case of Singh in this circuit stands for that proposition, that her harm was appreciably different from the dangers faced by her fellow citizens during a civil war. That's required in order to find that Ms. Pelico Perez was persecuted or singled out. And there's no evidence that she was singled out. It stands for the proposition that she was much like the other villagers forced to watch, but there's no evidence she was singled out in particular. And that is required in order to find that she suffered persecution because of a political opinion. Referring to the, if I might turn to the incidents of past persecution, alleged past persecution, these consist primarily of threats. There's no indication that the hardship associated with the Civil War in any way was intended to be directed specifically at Ms. Pelico Perez, nor that it was anything other than the hardships of the Civil War. For example, the starvation that she relates that happened in the mid-1970s when the government moved her village away from the foothills and mountains. The evidence in the record shows that that village was forced to move away from the mountains specifically for their safety. It did indeed create hardship because they were not able to farm their fields. So the government did that not to persecute the village, but for its safety because the guerrillas were in the mountains and the government intended to bomb the mountains. Her husband's killing, which this court has referred to earlier, may indeed have been tragic. And indeed it might have even been political. But there's no evidence that anyone imputed her husband's political opinion to the petitioner in this case. There's clearly no well-founded fear of a future persecution should Ms. Pelico Perez return to Guatemala in light of the December peace accords. She arrived in the United States in January of 1996. Having suffered the general hardship that is common in the strife of a civil war in Guatemala, 11 months later in December of 1996, a peace accord was reached between the government and the guerrillas. And while no society is perfect, there is still some injustice in Guatemala. The evidence is overwhelming that there has been a dramatic change as the guerrillas have been in the group and that a judicial system has been set up and that the board affirmed the immigration judge's decision, except for the minor change of not punishing Ms. Pelico Perez for what the immigration judge said was an alleged they make a finding of changed country conditions. He found that there is no well-founded fear, Your Honor, which is different. No well-founded fear based upon the peace accords. The country Was that the basis for the finding? Yes, it was, Your Honor. He went, the immigration judge went in great detail through all of the evidence in the record. Can you give me the page number of that? Of the immigration judge's decision, Your Honor? Of where he said it's the, that there's no well-founded fear of future persecution because of the changed conditions. The immigration judge says on page 29, Your Honor, that the petitioner has never been harmed, and that he finds the respondent has failed to establish a well-founded fear of persecution. He described in detail earlier. Based on the past claim, that's correct. He did review in detail, however, the Department of State reports, as well as the reports of the other groups such as Amnesty International. He reviewed those reports in detail, and those would be very much in his mind. But he doesn't rely on it in his decision. You're quite correct, Your Honor. He does not at this point. I stand correct on that point. I would emphasize that the burden is on petitioner to establish evidence of past persecution and a well-founded fear of future persecution. And the standard of review in this Court is quite clearly laid out. Petitioner argues that there's an alternative conclusion that can be reached from this evidence, that she suffered past persecution, and that it was on account of a political opinion, and that she has a well-founded fear of future persecution. It's important to understand that even if this Court were to agree that this alternative finding of petitioner is correct, or that they agree that it is a preferable decision to that found by the judge, that that is not sufficient to overturn the immigration judge's decision. Rather, this Court must find on the basis both that she has suffered past persecution and that it was on account of her political opinion, her imputed political opinion, and they must do that, they must determine, this Court would have to determine that the evidence was so compelling that any reasonable fact finder would reach that conclusion. Petitioner, Respondent would suggest that this record cannot support such an overturn of the immigration judge's decision. Thank you. I'd like to first address Respondent's claim that this was just generalized violence. Indeed, the violence was targeted based on her imputed political opinions. The violence that was directed towards the villagers in general was based on their perceived pro-guerrilla affiliations. For example, when they were confined to the center of town, they were told that if they were to leave, they would be killed for having aided the guerrilla movement. Her family members were known as activists in the community. Her father had accused the Guatemala military of shooting at villagers, and it was shortly after this that her family began to receive death threats. The death threats were directed to the Palico family. And so Ms. Palico would be part of that targeted group. In addition, her husband was killed because of his political beliefs. He was killed shortly after having agreed to lend support by growing food for the guerrillas. Also, his outspoken beliefs against the oil company were considered to be pro-guerrilla beliefs, because at the time, the guerrillas had come into that oil company and kidnapped, I believe, 10 of the American workers there. And so the oil company that or his outspoken beliefs against the oil company would have been perceived as pro-guerrilla at the time. And this Court's decision in Navas has stated that spouses of political activists, there is an imputed political opinion towards them. In addition, Ms. Palico herself was targeted, apart from her union and her family. She was living in a house that was told was a safe house for the guerrillas. I believe this is a house that her husband had also lived in and was growing land, and the government believed that this was a guerrilla safe house. And shortly after this, she received letters directed specifically to herself, and even after relocating, she received letters directed to herself, not to her family members in general. This case is based on an imputed political opinion, based on her connection to her family, and based on the government's belief that she was living in a safe house. And finally, the Respondent's assertion that her family members are living safe. If it's based on an imputed political opinion, then that's not the same as being persecuted. It's not the same as being persecuted on account of being an Indian, is it? That's correct. I believe that this case demonstrates that she's both persecuted because of her race and because of her political opinion. So you're claiming both? I am. I do believe that the claim of imputed political opinion is a stronger claim in this case. In part because her political opinion is a stronger claim in this case. The ongoing safety of her family members is not supported by the record. She consistently testified that her belief, her knowledge of her family members was based on the time that she left. So at the time of the hearing, there's no proof of ongoing safety of members of her family. I request that this Court remand the petition for review solely for a determination as to whether, in the Board of Immigration Appeals' discretion, she would qualify for asylum. I believe the record shows that her asylum application is, she qualifies for asylum and the withholding of deportation. Wouldn't we have to remand for a determination of change? In this Court's recent decision of Lopez, the Court did remand for change country conditions. But this case is distinguishable from Lopez. And Lopez, the Court held that because the immigration judge had only devoted two sentences to change country conditions, that it was not a sufficient individualized determination. But here on page 143 of the record, which is page 26 of the judge's decision, he does go into detail. And I see my time is out. Just a moment. I'm sorry. It's page what? 143 of the certified record. At the bottom. The Court finds that the background material regarding the peace process shows that the guerrillas have been given amnesty, that the Army has lost interest in people aiding the guerrillas. The background material primarily shows that high-profile individuals such as human rights activists, and that he concludes that not somebody who simply was accused of giving food to the guerrillas 10 years ago. So I believe he did attempt to make an individualized determination of past of change country conditions in regard to Ms. Figo. I think that's what that amounts to. Yes. Okay. Thank you. Thank you, Your Honor. The case just argued is submitted for decision.
judges: Schroeder, Goodwin, Tashima